and we'll hear argument next in Schism v. Ferris, 212622. Good morning, may it please the court. Greg Johnson, I represent Brett Ferris from the law firm of Johnson and Laws. I'd first like to start by thanking the court for expediting this appeal. Currently, Brett Ferris is facing a jury trial date of May 31. Officer Ferris brought this appeal after 22 months of discovery by a motion for summary judgment on a robust evidentiary record and sought to have the qualified immunity issue addressed as a matter of law and has pursued this appeal to do exactly that. Before I raise my issues about the errors and the omissions by the lower court, I just want to point out a couple issues relative to this case that make it somewhat unique in terms of the excessive force cases that are in reported case law. This incident and this use of force decision was undisputedly made within a five-second interval at about 5 p.m. on June 13, 2016. As the audio recording reflects and there's no dispute about the authenticity of that audio recording, the entire encounter, the street encounter took place over the course of a verbal exchange prompted by the decedent and there was absolutely no use of force or even threatened use of force during that 15 seconds. In fact, the record makes very clear that the officers were hoping that the decedent would just move on so they could continue with their undercover operation. The last two seconds of this 22-second encounter involved the deployment of lethal force by Ferris. So, the use of force decision here is made within the span of five seconds which is an important starting place for the Fourth Amendment analysis and the qualified immunity question and one other feature about this case that makes it somewhat unique and from other cases is that this encounter wasn't prompted by the police. The police had no plan concerning decedent. They were not pursuing decedent. In fact, the entire encounter was prompted by plaintiff approaching and confronting them. So, as a matter of law, the district court erred. First of all, what prompted the plaintiff, what prompted the officers to get out of the car when he was walking away? Sure. As as reflected by all of the witness testimony, as the decedent was located near the driver's side of the van, he then and and the verbal encounter ended. Then, he walked in front of the van, okay? Not across the street, walked in front of the van, lifted up his shirt and displayed or brandish whatever word you wanna use. Uh his nine-millimeter semi-automatic gun that was tucked in his waistband. So, are you asking us to to conclude that the possession of a firearm is a per se probable cause of a threat? Is that what we have to decide here? No, judge. At that point, lethal force was not warranted at that moment in time when he initially brandishes his gun. I'm not intending that lethal force was warranted and in fact, it wasn't used. The the the audio and the facts reflect that there was that next five-second interval. What that brandishing did was it initiated an engagement where both officers scrambled to get out of the car and gave verbal commands and then of course, we have the behavior of the decedent which involved two important and undisputed facts that are material to the Fourth Amendment analysis and the qualified immunity analysis. Number one, he disregarded those commands. Um and number two, uh he removed the the handgun from his waistband and had it in his right hand. Well, that's disputed though, right? Isn't the uh didn't the CI say that he had his hand on it but there's a debate about whether or not he was tucking it in versus pulling it out? No, judges, it's it's a fact that's ignored by the district court and it's denied. Um. But that means it's disputed though, right? Well, and so are you asking us to find that it's not material? No, I'm absolutely not judge. What I'm asking is that that you we look at the record and that that fact is absolutely undisputed. First of all, there's no evidence from any witness or any material evidence that the gun remained in his waistband and I refer you to the following portions of the record which clearly clearly establish that that the the handgun went from his waistband to his right hand in those 5 seconds and when he was shot, it dropped from his right hand and the handgun ended up not in his waistband but on his right hand side next to his body and I refer the court specifically to A799. That's a statement given by the CI. That's the primary witness that the plaintiff relies on. The plaintiff didn't offer any of her own testimony in opposition to summary judgment but she relied on the CI and in that he very specifically says the guy started to run and stop trying to tuck it in and the gun was on his right on his side. Excuse me on his side in his right hand and then we go forward years later tuck it in right. That's not that he has it on his on his side in his right hand. That's that's the explicit testimony given by the CI 2 hours after the incident. The record reflects that the plaintiffs deposed the CI 4 years later in 2020 and he repeatedly he confirmed that. In fact, if we look at pages 837 to 852 in response to plaintiff's questions, he confirmed that he had the gun in his right hand. If we look at if we look at A7873 in response to my questions between 872 and 874 in his deposition, he confirmed three times that that decedent had the gun in his right hand and specifically said on page 873 line three, he dropped it after he got hit. In addition to that, during his 2020 sworn testimony, the plaintiff's deposition of the CI, he confirmed four times and that's at record site A64 864 and 867 that his June 13 2016 sworn statement was truthful that he understood was made under oath and that his recollection of the events was better on that date. So the lower court basically didn't even address decedent's behavior during that 5 minute window. That points you to A835 of the appendix with the CI as I understand it. Question at any time before detective Ferris fired his gun at mister Schism. It's am I pronouncing that correctly? I wanna make sure I am. I think it is Schism judge. Yeah. Did you see mister Schism point a gun at detective Ferris? Answer no. Question at any time before detective Ferris shot mister Schism. Did you ever see mister Schism turn towards detective Ferris with a when he when he after he walked away from the gun, he had in his back question, okay, well, my question is, did you ever see him turn around and face detective Ferris with gun in hand? Answer no. Why isn't that at 835? Understanding what you've said about other things that the CI has said, why isn't that um something upon which the plaintiff can rely to show a at the critical time that I agree with you that that's the critical time. Yes. Well, judge, I I guess I would say two things about that. First of all, most importantly that we can even if that is disputed fact, if if you stop the analysis at the point in time when he clears his gun out of his waistband during that 5 second interval, at that point in time, irrespective of his body movements, in the in the last instant, as a matter of law, he clearly, a reasonable officer in Ferris's position, would have considered that to be a a a significant threat to his death, to his life and safety. So, so, I appreciate that this is such a tragic case. Absolutely. You understand and I appreciate what you're saying but it is one thing uh for a police officer to shoot someone who's turning around. Another thing, this is this, it seems to me, maybe the uh dispute, another thing entirely, shoot someone as that person is uh walking away and it's not turned around even with the gun in the back. Uh so then I hope you understand that and that it seems to me at least there's a dispute about that and you know, ultimately, uh uh it the dispute may uh be resolved in a way that in yours to to your client, to mister Ferris, to officer Ferris but right now, unless I'm, I've misread AA35, it seems to be a factual dispute. No, judge, I don't, I don't think you have and I acknowledge, I'm well aware that when the CI was deposed in 2020, he was asked a series of questions of if he had seen schism turn in the very last moment. Absolutely and the and the CI said he didn't see that. So, setting aside the issue of whether or not that's a dispute about his movements because he was never asked the question, what were schisms movements at the last instant? Because the CI was looking at various things but setting that aside, even if we stop the stop the facts at the point when he's in this 5 second interval, a suspect is disregarding three commands and and undisputedly pulls his weapon from his waistband and has it in his right hand. He most certainly presents the kind of threat that justifies uh use of lethal force under the Fourth Amendment and I very, I see my time is out but let me just briefly, can I finish that thought? Of course, of course. Would be that that we're here talking about a semi-automatic handgun which of course is is capable of within a matter of a second or two discharging multiple rounds. It's not a rifle. It's it doesn't require two hands. It requires one hand. He's that's why I asked if you're asking us to find that the possession of a firearm is a per se reasonable threat. I'm not I'm not suggesting that mere possession judge was sufficient to justify the lethal force. I am saying that disregarding commands to get to the ground and then drawing that handgun out of your waistband is absolutely under the Fourth Amendment justification. Is there any dispute that they didn't announce themselves as police officers? They didn't use the word police. There's the the the audio reflects that even though most of the witnesses who recounted it actually understood it to be police commands. You're correct, judge. The audio does not reflect. What is the legal significance of that about whether or not it was reasonable for him to not comply when the police didn't identify themselves? Well, for for the for the question that's before this court, I don't I don't think it has relevance because we're asking it. We're we're dealing with the situation of whether or not Ferris was justified in responding to what he saw in the street by use of lethal force, but if to back up, I certainly understand that in when it's feasible when it's feasible before lethal force is used, it's clear that a police warning would be appropriate. Clearly, if you listen to the audio, not just appropriate, not just appropriate, but the a police warning could have the entire thing. There's a lot of what ifs judge. Absolutely. I'm I'm I'm not I'm not I'm not minimizing the fact that that when it's feasible, a warning, a police warning is to be used before before lethal force is deployed. What I'm saying is that the did one of the officers say that they thought that there was time to announce themselves? Am I recalling that correctly from the record? In the record, I think all all three officers on the scene judge were asked hypothetical questions as to whether or not they could say announce police in a five second interval. Sure. Yes. What did they say? Didn't they say that they that they that they that they somehow showed their showed their badges, which is kind of odd because it would be a an ineffectual way to to reveal yourself to be police to a man who's running away from you, but I didn't they say that they would that they tried to show their that they lifted their lifted their their whatever it was shirt to show the badge on the on the shirt that was under the exterior garment, but there's a distinction between two officers judge. Yes. Officer Kent who did not deploy force didn't have an opportunity to but made the same decision. He had his badge on a lanyard and as he got out of the car, he pulled that out. There's no dispute about that, but more importantly as the Ferris judge, you make a very good point. His handgun was located behind his badge on his hip. So in order for him to actually reach back and get his handgun, he displays his badge and there's there's photographic evidence and testimonial evidence of that fact as well. Is there so my understanding is that there's some I'm I don't wanna I'm not describing what I think is true. I'm just describing as you know what the potentially conflicting evidence is, but it seems that Mr. Schism is moving away at that point and the question would be was he in a position as he's retreating assuming that that's the version of events as as we'll hear from the other side. I'm sure as he's retreating can he see if he doesn't hear the word police can he see these badges and that's yet another wrinkle in this tragic case, but can you shed any light on that? Well, you're you're right judge. I can't. I don't think anyone can answer the question as to whether he saw that I can tell you that in the record the the enhanced version of the audio reflects him actually saying at the last second you don't tell me which would indicate would indicate that you know he was looking back, but I you know I understand that's it. That's it. That's not a fact that's undisputed clearly. I think people say some people say they listen to that audio. They can't hear it. I don't think this record definitively can answer the question as to what SISM's motives were or his thought process where he was headed or what his objectives were, but as to the retreat issue, and I know well over my time, I just would cite to the following cases by the Supreme Court Mullinex versus Luna Plumoff versus Ricard Scott versus Harris and Brousseau versus Haugen. In each one of those cases officers were granted immunity and in situations where there was an unarmed suspect retreating away from the officer who deployed force. So I submit to you as a matter of law, the lower court erred in concluding that because the direction of movement by SISM was not directed at the officer. He didn't present a significant threat of death or physical injury and with that I hope to speak to you on rebuttal. Thank you. We're well past your time as well, but that was based on our questioning. We'll hear from your friend on the other side, Ms. Dessault. Good morning, your honors. May it please the court, my name is Marie Dessault, counsel for the plaintiff appellate Crystal Skism, individually and as administrator of her husband's estate, Joshua Skism. It is clearly established law that it is unconstitutional to use deadly force unless there's an immediate threat of death or serious injury and if warning has been given, it's feasible. Warning was feasible here, it was not given. That's conclusive, we know that. The fact that the defense counsel presents, just highlight the fact that there's definitely disputed issues here. Defense counsel's recitation of the facts is based upon the defense version of events. The plaintiff's version of events, and we must go back to the totality of the circumstances, even though we're looking at the time that the shot was fired, but in terms of whether it was objectively reasonable to perceive an immediate threat, we have to look at the entirety of the circumstances here of this encounter, which the defendant does not do. First of all, the officers were there staged as an undercover drug buy operation. They were meant to look like drug dealers intending a drug transaction on this residential street. They were parked in an unmarked minivan with tinted windows. It was broad daylight on a summer afternoon. Mr. Schism saw them and approached, as one acknowledges, the confidential informant has testified that he saw, or he stated in his sworn affidavit that he signed on the day of the incident, that he saw that Mr. Schism came from the house to the left, from the steps there and walked over towards their car. As the officers in the vehicle, which were the defendant and Detective Kent sitting by his side, and Detective Party sitting behind with the confidential informant, as they stated, they saw Mr. Schism as he approached the vehicle. At that time, Detective Party had his vest in the car. He hid it so that if the person came up, they would not see that they're police officers. They were dressed in street clothes, t-shirts, facial hair, tattoos, and they fooled Mr. Schism. He came up. He said, he expressed his concern about them being there. I said, don't do this stuff on my street. I have kids that live here. They all took this to mean that he understood that he believed they were drug dealers, just as they intended for everyone to believe. After saying this, the defendant said, okay, bro, and Mr. Schism thanked him, turned around and walked away. He didn't parade in front of the vehicle. He walked back to where he was going. I don't know where that came from about the parade, but no one described him as doing any type of dance in front of the vehicle. He was starting to walk back. Do you mind pointing to what clearly established law you think best justifies an officer like Officer Ferris not concluding that somebody whose right hand was on a gun with the safety deactivated was reasonable to try and detain them? Well, first, there was absolutely nothing about Mr. Schism's actions that indicated he was a threat. He approached himself as a concerned citizen, and he walked away. They then saw him tucking the gun into his waistband. But the officer is entitled to fair notice that the conduct that they are about to engage in or the conduct they engaged in is improper and clearly established law. You do a good job, I think, in the brief of explaining why some of the cases cited don't apply, but can you tell me where the clearly established law is? I'm sorry. The clearly established law is the basic is the basic statement that deadly force may not be used unless there's an immediate threat of death or serious injury, or if it's objectively reasonable to perceive an immediate threat of death or serious injury. Is that a little more generalized than what the Supreme Court has been tolerant of in the past, though? Actually not. It's going through the cases and even cases where there have been guns, the issue has always been still at the time, whether there was an immediate threat of death or serious injury. For instance, in White v. Qualley, I believe. Oh, I'm sorry, Smith v. Sawyer, which involved police arriving at a club after a shooting. They went to the club. They were told the suspects in the shooting had gone off in a car. They chased them. They got them. And at the stop where the suspects were noncompliant and not opening the door, there was obviously a gun in the vehicle that the police officer saw. And the police officer did use deadly force and shot the driver. The police officer was not entitled to qualified immunity as a matter of law because there was issues of fact of whether the police officer claimed that the driver was pointing the gun at her, whereas the driver- But if that case turned on issues of fact, how then do we that there's a question of law then that gave Officer Ferris reasonable, fair notice and was clearly established enough for him to understand that his actions in that circumstance would be improper? Well, it goes down to was there an immediate threat? And this is how it has been evaluated. I mean, case law does say, and the Supreme Court has said, the facts can be different. There are novel facts. As long as the precedent, the principles have been established, and it is established that to use deadly force, and this is in cases not involving deadly force, but excessive force, there's a scale, there's a weighing of the government interest, and there's a lot more potential ambiguity. But in case with deadly force, it can only be used if there's an immediate threat of death or serious injury. And- Why isn't that true? When the person is admittedly running away, but has reached for the, has reached for the gun, has reached for the gun in his back waistband, in response to the officer's command to lie down in the street, instead of doing it, he runs away and reaches for his gun, and his hand is at the very least, on the gun. Why isn't that response, reaching for the gun and running away in response to the command, why isn't that an exhibition of hostility to the person who's giving the order, and one that puts them at threat of deadly force within a quarter of a second? How long does it take to turn around and start shooting? It takes barely less than a second to turn and shoot. So I don't understand why that isn't a threat of deadly force. Your Honor, that's a, it's a potential threat. It's not the immediate threat. And in this case, the facts were not, those are the facts according to defendant's version of events when they're, when they're not, you know, not claiming that he also turned around. But the confidential informant as deposition, he made it clear after going, after a number of questions on this issue, he explained what he meant when he said, he, on page, page 881 of the record, he said that, that Mr. Schism's gun came out when he got hit. When he fell, it came out. Mr. Schism had been funneling it when he was, and running away from them, trying to stick it down his pants. So after he was funneling it, that's when it got out. And he later explains in further depth, if I came, so when they're asking, so it actually came out for the first time after he was so if I come up to a car with gun and have the gun behind my back, you don't know I have a gun behind my back. So when I turn around, you see, I have a gun behind my back, and I'm trying to conceal that weapon. I'm trying to push it down. Right. So, so, and after he tried to conceal that weapon, he got hit. It was only two to three seconds span. It ain't like he had a half mile radius to go put it away. So what the confidential informant explained is that when they first saw Mr. Schism walking away with the gun in the back of his tucking away, that's all he was doing. And he continued to do that. There was no sudden change. And he was walking away. And then he started running away when these drug dealers came bursting out of the vehicle, never identify himself. And of course, he's going to be running away. And he was keen to still push the gun into his pants. He hadn't changed his movement. So and defended acknowledges that when the police officers were in the vehicle, they did not have, they would not would not be their rights to shoot Mr. Schism as he was walking away, pushing the gun down. So then when he was running away, pushing the gun down, why does there, why do they have an entitlement to qualify immunity now? I would say that the danger was similar. I mean, they, you know, at the, to the extent that defendant claims that the defendant was acting with split second decision making, he created that split second. He, he should not have been acting with split second decision. He sort of paused and thought he should have assessed the situation when they were in the vehicle. So Mr. Mr. Johnson pointed out near the end of his argument a few minutes ago, that there are some cases, I think he said it to Mullenix, in which the Supreme Court has determined that a, an officer is entitled to qualified immunity after shooting or not withstanding that they've shot a fleeing suspect. How do we distinguish those cases? Well, Your Honor, those cases that defendant refers to, it's, it's, it's a red flag to the, to the lack of merit to the appeal, because in those cases, it wasn't, it was, the suspect was in a motor vehicle and they were using it as a, as a weapon. They were, in one of the cases, they were running over, they were hitting cops and one officer believed someone was underneath the wheel, underneath the tires. They were, they were, you know, it's certainly a motor vehicle can be a very dangerous instrument. So they were not just fleeing, they were causing substantial, they were risking the lives of the people around them and, and not, not only the officers that are standing there, but also pedestrians and other motorists. Officer Ferris, I'm sorry, please finish. I was just, so they were not really, and they were, were armed, they were armed with the motor vehicle in those cases. I was going to say that Officer Ferris's counsel points out a scenario that I do want you to speak to. It's the idea of what a reasonable officer would conclude when they were giving instruction to get on the ground and someone didn't do it. I'd like for you to comment on that. Well, Your Honor, that goes back to the whole, the entire of the circumstances here. Now, based upon what, what they perceived and what was, what a reasonable officer would have perceived, Mr. Schism at no point threatened them. He came up as a concerned citizen. He walked away when he was told that they would either resigned or satisfied with their response. He said, thank you. He walked away. Okay. So you're, you're saying that because of the differing perspective, there was a dispute of fact that, that should go back to the district court to decide beyond the summary judgment stage. Is that, is that what I'm understanding for I'm saying this, it is entirely defendant has a frame. The whole encounter is threatening. It never was threatening and they all, um, and they all acknowledge that they, that he thought they were drug dealers and that they weren't threatened. And when they saw him, um, you know, when they saw him walk away and they jumped out of the vehicle and they yelled something at that point in time, that was not a police command. That was simply a person screaming at him who he thought was a drug dealer. That explains, but that explains Mr. Schism's and with great respect, uh, I, uh, as I said to Mr. Johnson, this is extremely tragic, uh, all around, uh, but that explains Mr. Schism's actions. Uh, I think I'm very focused on, uh, officer Ferris action. So, you know, what he thinks is I'm a police officer, uh, and this person's got a gun and, uh, is, uh, got his hand, uh, potentially on the gun. That's the version of defense, right? So what is the precise dispute? And I know that there's a CI, you mentioned there's a medical expert and so on. Well, when, when the, when officer Ferris jumped out of the vehicle and saw this man beginning to run, or I don't know if he screamed at that time, but he, it was not objectively reasonable to think that the man was going to get on the ground just because he yelled it. It was not objective. There was no reason for him to anticipate the man would go to the ground and abide when he didn't know that he was a police officer. I mean, there was nothing that changed. They all acknowledged that they, they didn't, they knew that he didn't think they were police officers. And then the next thing he knows they're screaming at him and chasing him. And he's an detective, um, um, defendant Ferris is, is shooting and running after him. He testified he was running after shooting. Bullets were going into windows. Um, uh, this was, this was a scene that was all of, um, defendant Ferris's creation, the, the, the chaotic, the, um, evolving events, the split second decisions was all defendant Ferris is doing. Mr. Schism was walking away. It was objectively reasonable. And it was objectively walking or running. Well, he's initially started to be walking away and then it was objectively reasonable to expect him to start running. If you're coming out of the car, uh, carved your gun strong. And, um, when, you know, whereas they, you know, the defense counsel has said that, um, defend, um, defendant's badge was exposed. He pulled out his car when he was, he pulled out his gun when he was in the vehicle, because he said he came out with the gun drawn and, and, and that he was drawn to, um, Mr. Ferret, um, sorry, Mr. Schism was turned away from him. So of course, you know, of course, defendant, um, defendant could not anticipate that he would have seen it. It would not have been reasonable, would not be objectively reasonable that he would have known that he was a police officer. So you're just, I want to make, I want to just get this very clear under your version of facts based on the confidential formant and based on, uh, well, really based on that, um, Mr. Schism was, uh, running away at a certain point that he was shot. His back was towards officer Ferris. He's running away. He may have had a gun, uh, in his hand, but he was running away and not turning around in any way, shape or form. Where was he? Where was he shot? On his body. He was shot in the back of the head. He landed on the steps of his house. So he was going back to where, and this is another thing, you know, um, the defendant, when he was in the vehicle before he decided he saw that he saw a gun in hand, uh, well, actually not in hand by the back of the back of his waistband. Um, and he jumped out. He didn't inquire if when anyone saw him before, um, you know, where he came from, if he had the confidential form, I could have told him, yeah, I told, I saw him come from the steps of that house. He didn't inquire if anyone had a vest. And if he had, then detective Barty could have said, yes, I have an invest. He didn't contact, um, Sergeant Savoy or Lieutenant Sanders were just a mile and a quarter away and could have been there two seconds. They were the supervising officers also on this thing. And they were available by radio. Um, detective Kent had just hung, had just, um, had a radio communication with them right before Mr. Schism approach. So there, and then defendant Ferris, like in all these situations, he wasn't applying any type of objective. He, he wasn't applying any type of judgment. He jumped out of the car. Um, it was not objectively reasonable for him to receive defendant, um, to perceive Mr. Schism as, as having any knowledge that he was a police officer. He yelled out a command that he could not expect Mr. Schism to comply with because Mr. Schism, because he knew that Mr. Schism thought he was a drug dealer. And then he started shooting at him. And meanwhile, Mr. Schism was just, you know, from the, the confidential format said he was talking to the gun in, in the back of his waistband, walking away. And then he was running away. All right. Thank you very much. Was the, um, was the, his, his house on the driver's side of the vehicle? No, it was on the other side. It was, oh, I'm sorry. Yes. It was on the driver's side. The driver's side was on the driver's side. Yes. I apologize. Yes. Because he's running away from that door. Right. He was running. He was walking away, going towards the front of the vehicle going and it was like, you know, veering to the left because they described him walking to the middle and then going towards the left. That's what they saw as he was walking away. And then he just proceeded to run in the direction that he was walking when they came out the gun strong. So it was driver's side and ahead. Yes. Okay. Thank you very much. We'll hear from Mr. Johnson on rebuttal. Mr. Johnson, you've you're on mute. I guess I didn't click hard enough. Thank you. Um I guess two things in response to plaintiff's counsel's argument. Number one, it appears that now, um the theme is a provocation argument which of course has been rejected by the US Supreme Court trying to criticize the police work leading up to the incident and and and secondly, um the plaintiff's analysis is replete with um looking at subjective facts and not applying the objective reasonableness from the perspective of a reasonable police officer in Ferris's shoes and I just want to bring us back to the the relevant time period. Let me let me just be sure. I think they're a little bit to to both sides as I understand the argument uh or the really the factual argument uh for lack of a better term. Uh the version of events that assault wants us to embrace or to look at is the following that uh Mr. Schism uh leaves uh starts walking away from the driver's side of that car. Uh the police officer, Mr. Officer Ferris takes out his gun uh while he is in the car um and uh opens and gets out of the car, starts to move towards Mr. Schism. Mr. Schism has a gun in the back of you know his I guess pants or whatever his waist uh but he starts to uh run uh and eventually what happens is that he is shot in the back of the head uh and never really is in a position to turn around at the critical moment when he shot uh never turns around uh and and is killed. That's the version of events that I just I believe that we all heard. So, would judge um the the well, let's start with the clearly established law question that that one of the justices raised looking at those particularized facts even as you lay them out um there there are there is no clearly established laws of June 13th 2016 that would have informed an officer who's in the middle of the street with no cover with no ballistic protection who observes a suspect be noncompliant and grab his semi-automatic handgun with his right hand that those facts alone right there judge as a as a matter of law entitle my client um to qualified immunity and I just want to add a couple quick thoughts because I know I'm beyond my time. There's the record evidence is very clear that none of the officers most importantly Ferris had any idea where Sism had come from or where Sism resided. So, the notion that he's running over towards bushes and an area where there's a stone wall is somehow to a reasonable officer in Ferris's shoes would have meant that he was surrendering or retreating and not being aggressive is simply not is simply not supported by the record or the law and when you compare his movements, let's assume for the sake of discussion accepting plaintiff's argument that he was moving away and not turning towards the officer when he has a semi-automatic handgun, he that can be deployed without turning and squaring off at your target and when you compare that to the retreat cases that I spoke about earlier that are in my brief in and you compare the immediacy of the danger that is someone firing a semi-automatic handgun from approximately 30 feet away as opposed to a erratic driver unarmed driving out on the roadway and and presenting a risk to the public and you consider the specificity of this danger. You've got at least one citizen in the back of the van. You've got three police officers, two of them in the middle of the street without protection that the nature of the danger that Sism presented in grabbing his gun at that moment is far far more grave than the kind of dangers that face police officers in those cases decided by the US Supreme Court where the officer deployed lethal force from behind a retreating motorist. So if I could just maybe maybe put a finesse then to a question that I've asked now twice you have stated very clearly that you're not asking us to find that per se possession of a gun presents a reasonable threat. Are you asking us to find that per se placement of a hand on a gun? Provides the kind of reasonable fear of threat. I'm going to try and answer your question. I'll tell you it was phrased it as a per se rule. So I don't I don't know. I don't know. I guess I'd have to research that issue, but I can say this that that it's very clearly not in violation of clearly established law that when a suspect in possession of a semi-automatic handgun disregards commands to get to the ground and then grabs his handgun with his hand that that gives rise to the exact kind of threat that justifies the use of lethal force under the precedence of this court and the US Supreme Court. A couple of questions I have one is if I understand correctly, none of your argument depends on any contention that Schism was in violation of any law does it? With respect to the possession of the gun. Not necessarily other than the fact that his brandishing of a gun certainly prompted the police officers to get out and get him to the ground so they could control that gun. So no. Possession of the gun was not illegal. In of itself possession someone can lawfully possess a handgun. Sure. Alright. So the next question is what happens here if we affirm the district court? What happens thereafter? To go to a trial and is it a jury question? Does the does the question of qualified immunity persist to be answered in some form or other under quite detailed instructions by the jury? He still gets to argue not on summary judgment, but in the Yes, judge as a matter of law, I think based on what the trial judges outline of the trial process will be for this in this case in this qualified immunity issue. If there is a verdict as I understand her at our conference, if there is a verdict in favor of the plaintiff, she will then submit interrogatories to the jury to have them answer certain questions of fact and then she has a matter of law will reconsider the immunity question. so so but obviously and the reason we're here and the reason this court exercises jurisdiction is the Supreme Court and this court most recently in Damascus made very clear that having to stand trial. Of course, when the immunity question can be answered as a matter of law frustrates the qualified immunity doctrine and that's why that's why we're here in appeal and I thank you for the litigation now. I'm just we understand that absolutely judge. Thank you. I see I'm way over my time. What is your what is your best case for the proposition that a that someone who's fleeing and who has his hand on a gun represents such a threat of deadly force to the police officer that it justifies the use of deadly force by the Well, I I guess I would say two things legally speaking compare it to the decision recently done by the Supreme Court. You had a a suspect who was acting erratically suspected of no no crime had a kitchen knife in their hand was on the other side of a chain link fence from the officer who fired legal force and the the officer's rationale was that they were moving towards another a roommate when the roommate had testified, they didn't consider that a threat that that they thought that the person was acting out. So legally speaking, that would be my answer but but factually in this case, that was not a deadly threat to the police. That was a deadly. That was the officer's justification was a deadly threat to some other person right that that person didn't perceive and then the what's your best case for what's your best case as to why these facts represented a a deadly threat, a threat of deadly force to the against the police. Notwithstanding that he was running away from the the police even even away with his hand on a gun right judge even even assuming he's moving away from the police at the time he grabs his gun. It's a and I would point the court to the last 2 seconds of the audio recording in this very case that shows unequivocally that a semi-automatic 9 millimeter in less than 2 seconds can fire six rounds. So you're talking about the lethality of the threat posed by mister SISM and pulling his handgun. I think the record evidence in this case directly shows how lethal and dangerous that situation was and that's a good answer, but it's not the answer to the question. I asked the question I asked was the for your best case. Oh my my best legal case, I guess would be compare this case to to the case. I think no no, but I I said the case is a case where the threat was to a third person. I'm talking about a threat to the to the police officer your best case as to why as to the proposition that a suspect who is fleeing with a gun. Let's say with his hand on it or in his possession represents a deadly threat to the police officers justifying the police officer to use deadly force. I don't I don't have a case with those Particularized facts. II don't I've I've certainly have searched and I think that's the reason why I'm the second prong that detective Ferris is entitled to immunity. I'm seeing no other questions from my colleagues. Thank you. Thank you. It's submitted. We'll reserve decision that concludes today's argument calendar and I'll ask the adjourned. Thank you. I'll ask for you now. Thank you.